## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

DeAngelo Woods,               )
      Plaintiff,          )
                    )
                    )
v.                            )          1:22cv152 (CMH/IDD)
                    )
Officer Edmonds, et al.,      )
      Defendants.         )

### MEMORANDUM OPINION

This matter is before the Court upon a Motion for Summary Judgment ("Motion") [Dkt. No. 24] filed by Officers Edmonds and Easter, the two remaining defendants in this civil rights action brought under 42 U.S.C. § 1983 by DeAngelo Woods ("plaintiff"), an inmate at Meherrin River Regional Jail ("MRRJ"). Alongside their Motion, defendants filed a Roseboro[1] notice advising plaintiff of his right to respond. [Dkt. No. 26]. Despite receiving this clear guidance, plaintiff has neither filed a timely response to defendants' Motion nor requested additional time to do so. As a result, the Court deems defendants' Motion ready for consideration. For the reasons that follow, the Motion will be granted, and this action will be dismissed.

### I. Background

Plaintiff filed this action in February 2022, alleging that MRRJ officials allowed him to be attacked by a fellow inmate. [Dkt. No. 1]. He specifically alleges that, on January 26, 2022, he had been allowed out of his cell to "take a shower [and] use the phone" when his assailant faked having chest pains in order to be let out at the same time. Id. at 4. The inmate waited until plaintiff was off the phone and then attacked him while Officers Edmonds and Easter allegedly "watched instead of detaining [the assailant]." Id. Plaintiff adds that Officer Edmonds sprayed

---

[1] See Roseboro v. Garrison, 258 F.2d 309 (4th Cir. 1975).

him with pepper spray despite the fact that he was not the aggressor and that Officer Easter failed to intervene at all. Id. at 4-5.

With respect to these claims, the following facts are undisputed.[2] At all times relevant to this action, plaintiff was an inmate at MRRJ. On January 26, 2022, plaintiff was released from his cell so that he could use the telephone. While plaintiff was using the phone, another inmate, Kevin Cooper ("Inmate Cooper" or "Cooper"), was being examined after he claimed to have had chest pains. [Dkt. No. 25-1] at 3. As Inmate Cooper was being evaluated, he rose to his feet, approached plaintiff, and then attacked him. [Dkt. No. 25-1] at 3.



*Screenshot of M-Unit Surveillance Video 1 [Dkt. No. 25-3] at 07:37*
*Depicting Inmate Cooper (bottom right) approaching plaintiff (center).*

---

[2] The statement of undisputed facts consists of information derived from affidavits, documents, and video evidence defendants have submitted in support of their Motion for Summary Judgment. Plaintiff has not responded to the Motion, and his Complaint and Amended Complaint are unsworn and may not be considered as evidence. See, e.g., Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").



*Screenshot of M-Unit Surveillance Video 1 [Dkt. No. 25-3] at 07:43*
*Depicting Inmate Cooper on top of plaintiff, striking him.*

Officer Edmonds initiated an "all call" to the M-Unit and gave plaintiff and Cooper three verbal orders to stop fighting.  [Dkt. No. 25-1] at 3.  Plaintiff and Cooper continued to fight despite Edmonds's orders.  Id.  Officer Edmonds then used OC spray[3] on both inmates.  Id.



*Screenshot of M-Unit Surveillance Video 1 [Dkt. No. 25-3] at 08:02*
*Depicting Officer Edmonds beginning to administer OC Spray.*

---

[3] "OC spray" is shorthand for "oleoresin capsicum spray," which is another term for pepper spray.  See FACTS ABOUT OLEORESIN CAPSICUM SPRAYS, https://www.ojp.gov/ncjrs/virtual-library/abstracts/facts-about-oleoresin-capsicum-sprays (last accessed October 25, 2023).

Despite having been sprayed, plaintiff and Inmate Cooper continued to fight and eventually ended up on the ground. [Dkt. No. 25-3] at 08:35.



*Screenshot of M-Unit Surveillance Video 1 [Dkt. No. 25-3] at 08:40*
*Depicting plaintiff and Inmate Cooper fighting on the ground after being sprayed with OC spray.*

Roughly ten seconds later, five additional officers entered the unit and successfully separated the inmates. Id. at 08:42 through 08:52.



*Screenshot of M-Unit Surveillance Video 1 [Dkt. No. 25-3] at 08:40*
*Depicting additional officers arriving to separate plaintiff and Inmate Cooper.*

After MRRJ officials had restored order, plaintiff initially refused to be seen by medical officials but later relented after claiming he could not breathe. [Dkt. No. 25-1] at 3. Medical officials allowed plaintiff to clean his face in a sink, provided him water to drink, and confirmed that his "chest sound[e]d clear in both lung fields." [Dkt. No. 25-2] at 3.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

Read deferentially, plaintiff's pleadings could be construed to raise three claims: a claim based on the alleged failure to protect plaintiff from inmate Cooper's initial attack; a claim based on Officer Edmonds's use of pepper spray; and a claim based on Officer Easter's failure to stop Officer Edmonds from using the chemical agent. As explained below, no reasonable jury could find in plaintiff's favor as to these claims.

A.    *Failure to Protect*

As just observed, the first possible claim in this action is based on defendants' alleged

failure to prevent Inmate Cooper from attacking plaintiff or to appropriately intervene once the

inmates were fully engaged in a fight.

To prevail on a failure to protect claim, a plaintiff must show that he was "incarcerated

under conditions posing a substantial risk of serious harm" and that the prison official defendant

had a "sufficiently culpable state of mind," one of "deliberate indifference," toward the

dangerous conditions. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Gordon v. Kidd,

971 F.2d 1087, 1094 (4th Cir. 1992). "[A]n official acts with deliberate indifference if he had

actual knowledge of the … risks [the prisoner faced], but nevertheless disregarded them."

DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219,

225-26 (4th Cir. 2016)).  Consistent with this logic, "a random act of violence is not sufficient to

impose liability on prison officials." Miller v. Turner, 26 F. App'x 560, 563 (7th Cir. 2001).

In this case, the record does not support the notion that defendants had any knowledge of

inmate Cooper's intent to attack plaintiff.  There is, for example, no evidence of a preexisting

enmity between these inmates or evidence that one inmate had threatened the other.  Rather,

Cooper was out of his cell because he had claimed to be in medical distress, and defendants were

present on the scene for that reason.  The record does not contain any evidence to suggest that

defendants knew inmate Cooper's claim of distress was fake or pretextual.  Thus, Cooper's

initial assault on plaintiff constituted a "random act of violence" not supportive of liability.

Nor does the record support imposing liability on defendants for any claimed failure to

intervene while the fight was ongoing.  First, it is undisputed that Officer Edmonds issued verbal

orders for the inmates to stop fighting and administered pepper spray in a further effort to stop

the fight, facts that undermine any notion that she was deliberately indifferent to the danger

6

presented by the situation.  And any immediate effort by Officer Easter to intervene would have

constituted a risk to his own safety that the Constitution did not require him to take.  Indeed, a

prison-official-defendant "may be found free from liability if [he or she] responded reasonably to

the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 844.  Because "prison

guards have no constitutional duty to intervene in the [] assault of one inmate upon another when

intervention would place the guards in danger of physical harm," Prosser v. Ross, 70 F.3d 1005,

1008 (8th Cir. 1995), a guard's failure to intervene in a dangerous scenario may well constitute a

"reasonable" response.  See also Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) (en banc)

("[S]uch heroic measures are not constitutionally required.").

     To be clear, had Officer Edmonds not issued an "all call" for assistance and intervened

herself, Easter's comparative reticence would present a closer issue; however, as is clear from

the record, Easter was aware of ongoing efforts to stop the inmates from fighting and did not

hesitate to help break up the fight once additional guards arrived roughly one minute after the

fight began.  Under these circumstances, the Court concludes that Easter acted reasonably under

the circumstances and that liability against him is unwarranted.  Cf. Shields v. Dart, 664 F.3d

178, 181 (7th Cir. 2011) (upholding district court's finding that prison guard was not deliberately

indifferent to risk posed by a fight because she had "[taken] [] steps to intervene by promptly

calling for back-up and monitoring the fight from the secure area until other officers arrived").

B.    *Excessive Force*

     The next possible claim articulated in the pleadings is one based on Officer Edmonds's

use of force.

     Whether force used by prison officials was excessive is determined by inquiring if "force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In conducting this

7

inquiry, a court must look at the need for an application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986).

The use of pepper spray is not "*per se* a cruel and unusual punishment." McCargo v. Mister, 462 F. Supp. 813, 818 (D. Md. 1978). Rather, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). Accordingly, the use of pepper spray to "control recalcitrant inmates," see Williams, 77 F.3d at 763, or to break up fights, see, e.g., Santiago v. Walls, 599 F.3d 749, 757 (7th Cir. 2010), does not typically provide the basis for a constitutional violation.

Here, the record supports the notion that Officer Edmonds used pepper spray in a good-faith effort to restore order within MRRJ. Before using the spray, Edmonds issued verbal orders for the inmates to stop fighting. She resorted to the use of pepper spray only when that strategy failed. What's more, the video evidence defendants have submitted demonstrates that Edmonds did not continuously pepper spray the parties but instead used the substance in a limited capacity and ultimately opted to wait for additional guards to break up the fight rather than relying on chemical agents alone. Based on these facts, the Court concludes that there was, without question, a justification for the initial use of pepper spray and that Edmonds tempered her use of force. Additionally, although the record makes clear that both Inmate Cooper and plaintiff were seen by medical officials after being sprayed, there is no evidence that either individual suffered any significant or lasting injury.

8

Thus, the Court concludes that the <u>Whitley</u> factors discussed above resolve, on balance, in Edmonds's favor and that Edmonds used pepper spray in a good-faith effort to restore order in MRRJ.  Judgment will therefore enter in defendants' favor as to plaintiff's excessive force claim.

C.    *Bystander Liability*

Finally, the Court addresses plaintiff's bystander liability claim against Officer Easter. The Fourth Circuit "recognizes a cause of action for bystander liability 'premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" <u>Stevenson v. City of Seat Pleasant, Maryland</u>, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting <u>Randall v. Prince George's Cnty., Maryland</u>, 302 F.3d 188, 203 (4th Cir. 2002)). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." <u>Randall</u>, 302 F.3d at 204.  Consistent with the first element of the test just articulated, "bystander liability will lie only where, at a minimum, there is an underlying constitutional violation by another officer." <u>Goodwyn v. Roop</u>, No. 7:17cv271, 2020 WL 4689848, at *2 (W.D. Va. July 23, 2020) (citing <u>Thomas v. Holley</u>, 533 F. App'x 208, 221 (4th Cir. 2013)).

Here, as explained above, the Court has concluded that no violation of plaintiff's rights occurred.  Because there is no predicate constitutional violation on which to support a bystander liability claim, defendants are entitled to judgment in their favor as to this claim.

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted in an Order that will accompany this Memorandum Opinion.

Entered this $\underline{27^{th}}$ day of $\underline{\quad Oct \quad}$ 2023.

Alexandria, Virginia

*Claude M. Hilton*

United States District Judge

9